UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

INTERLINE BRANDS, INC.,

        Plaintiff,

vs.                               CASE NO. 3:14-cv-426-J-34JRK

AIG SPECIALTY INSURANCE COMPANY,
f/k/a Chartis Specialty Insurance Company,
f/k/a American International Specialty Lines Insurance
Company; LIBERTY MUTUAL FIRE INSURANCE
COMPANY; LIBERTY INSURANCE
CORPORATION,

        Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT, AIG SPECIALTY INSURANCE COMPANY'S, MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT IN PART

Plaintiff, Interline Brands, Inc. ("Interline"), submits its response, pursuant to Local Rule 3.01 of the Middle District of Florida, to Defendant, AIG Specialty Insurance Company's ("AIG"), motion to dismiss the complaint in part or, in the alternative, for a more definite statement in part [D.E. 13], and demonstrates as follows that the motion must be denied in its entirety.

## I.    INTRODUCTION

This is an action seeking a declaration as to the principal issues informing AIG's indemnity and defense obligations under the commercial general liability ("CGL") policies (the "Policies") issued to Interline by AIG for the policy periods November 1, 2007 to November 1, 2014.

Interline has been (and continues to be) the subject of hundreds of lawsuits based upon materially identical facts—Interline's distribution of ostensibly defective water supply lines allegedly resulting in property damage throughout the policy period(s) at issue.  For years, these suits have been defended and paid for by Interline's three suppliers or their insurance carriers pursuant to certain hold harmless and indemnification agreements. Recently, however, one supplier informed Interline that it no longer has the financial resources to honor its obligations, forcing Interline to resolve three claims out-of-pocket and leaving Interline exposed to the claims that comprise the Underlying Lawsuits and Outstanding Claims[1] at issue here.

While the Complaint complies with all Federal Rules concerning the relief sought by Interline and the details upon which such relief is based, AIG asserts that the Complaint should be dismissed because: (1) the issues related to AIG's indemnity obligations, as outlined in paragraph 59(a)-(c) of the Complaint, are conclusory and "devoid of any factual allegations to support them" and "premature" because "there has been no verdict or judgment against Interline" in the Underlying Lawsuits or Outstanding Claims; (2) resolution of AIG's duty to defend is premature because "there has been no denial of a defense and no facts stated which give rise to any actual controversy;" and (3) Interline's request for "damages" is improper because "[t]he Complaint does not allege any breach of contract or other cause of action which gives rise to damages...." [D.E. 13 at 6-7, 13-14].  In the alternative, AIG seeks a more definite statement with respect to the declarations sought in paragraph 59 of the

---

[1] The Underlying Lawsuits are a bundled subset of the currently pending suits brought against Interline for its distribution of allegedly defective water supply lines. The Outstanding Claims consist of the other water supply line suits currently pending against Interline. The number of Outstanding Claims is in flux, however, as numerous additional claims are asserted on a weekly basis.

Complaint because "they are so vague and ambiguous that AIG cannot reasonably prepare a response," and any relief pertaining to the "Outstanding Claims" because "the Complaint does not contain facts identifying the claims." [D.E. 13 at 14-17].

None of the advanced grounds permit dismissal or warrant a more definite statement. First, Interline does not seek a declaration as to the *coverage* aspect of AIG's duty to indemnify—AIG has not disputed coverage. Rather, as set forth in paragraphs 58 and 59 of the Complaint, Interline seeks a declaration as to (1) the number of occurrences applicable to the Underlying Lawsuits and Outstanding claims, and (2) whether Interline's deductible obligations have been satisfied by past payments made by Interline and/or its suppliers.[2] These issues, while related to AIG's indemnity obligations, do not require resolution of the pending lawsuits where, as here, the facts necessary to the resolution of those issues are well-established and settlement of the suits is imminent. Frankly, if a resolution of the Underlying Lawsuits as craved by AIG was first required, the very harm sought to be avoided by the declarations sought would befall both AIG and Interline.

Similarly, although AIG is currently defending under a purported reservation of rights, the Court's resolution of AIG's duty to defend is ripe and, frankly, critical under the circumstances of this case. AIG has taken full control of Interline's defense in several of the pending suits and, in doing so, reserved the right to seek reimbursement from Interline for all defense fees incurred on Interline's behalf. Thus, the Court's abstention on this issue would

---

[2] Interline has also sought a declaration as to the number of policies implicated by the Underlying Lawsuits and Outstanding Claims. This issue is ripe because that determination will dictate the number of deductibles which must be satisfied. The number of deductibles owed, in turn, is directly relevant to the disputed issue listed above – whether Interline's deductible obligations have been exhausted to date by prior payments. The issue of the number of policies implicated is also ripe because it will determine the limits available to AIG to settle the Underlying Lawsuits and Outstanding Claims that are the subject of ongoing settlement discussions.

leave Interline exposed to substantial defense fees incurred at AIG's sole discretion, as well as indemnity within the scope of Interline's deductible, assuming those deductibles have not already exhausted – one of the very issues sought to be resolved by this proceeding.

AIG also seeks a more definite statement with respect to the Outstanding Claims—other cases filed against Interline likewise alleging property damage incurred as a result of Interline's distribution of allegedly defective water supply lines. The Outstanding Claims are, for purposes of the declarations sought herein, materially identical to the bundled claims, and are pleaded as such in the Complaint. Interline seeks a declaration in this action regarding "Outstanding Claims" to ensure that this Court's adjudication of the issues presented with respect to the Underlying Lawsuits are applied equally to the Outstanding Claims. Moreover, the details sought by AIG regarding other claims are more appropriately the subject of discovery.

Lastly, AIG's contention that Interline's request for damages in the "wherefore clause" of the Complaint is inappropriate in an action for declaratory relief is without merit and the result of a misunderstanding of this Court's inherent authority under the Declaratory Judgment Act. Interline requested damages merely to preserve the Court's jurisdiction to enforce its judgment in this action under 28 U.S.C. § 2202. While such a request is not *necessary* to preserve the Court's jurisdiction to award subsequently incurred monetary damages, it does not provide AIG with grounds for dismissal.

## II.     ANALYSIS

### A. LEGAL STANDARDS

#### i.  Motion to Dismiss Pursuant To Fed. R. Civ. P. 12(b)(6)

The threshold of sufficiency necessary to survive a motion to dismiss is "exceedingly low." *New Lenox Indus. v. Fenton*, 510 F. Supp. 2d 893, 900 (M.D. Fla. 2007). A complaint must supply only enough facts to "raise a reasonable expectation that discovery will reveal evidence" in support of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). All facts contained in the complaint must be construed liberally in the plaintiff's favor and all pleaded factual allegations must be accepted as true. *Id.* If the complaint asserts enough facts to provide the defendant with fair notice of the claims asserted and the basis therefore, a motion to dismiss under Rule 12(b)(6) must fail. *See Powers v. Hartford Ins. Co. of the Midwest*, No. 8:10-cv-1279-T-24 WEP, 2010 WL 2889759, at *1 (M.D. Fla. July 22, 2010).

### ii.  Motion to Dismiss Pursuant To Fed. R. Civ. P. 12(b)(1)

Jurisdictional challenges, such as lack of ripeness, are treated as a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). *See Digital Prop., Inc. v. City of Plantation*, 121 F.3d 586, 591 (11th Cir. 1997). A "ripeness" determination under the federal Declaratory Judgment Act ("DJA")[3] must be made on a case-by-case basis. *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). An action is "ripe" where the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Courts in this Circuit are required to consider the following when conducting such an analysis: (1) whether there is an actual dispute that the Court can rest its judgment upon and (2) the hardship to the parties of withholding court consideration. *See Digital Prop., Inc.*, 121 F.3d at 589. Where the actual dispute prompts concern as to an

---

[3] In a federal diversity action, the DJA governs whether a declaratory judgment action could lie in a particular case. *Nirvana Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 589 F. Supp. 2d 1336, 1343 (S.D. Fla. 2008).

injury not yet in existence, the dispute is ripe for consideration where there is "a substantial likelihood that the plaintiff will suffer [such] future injury...." *Axis Surplus Ins. Co. v. Contravest Constr. Co.*, 921 F. Supp. 2d 1338, 1343 (M.D. Fla. 2012). The contingent nature of the right or obligation in controversy will not bar a litigant from obtaining declaratory relief when the circumstances reveal a need for a present adjudication. *See, e.g., Browning-Ferris Indus. of Ala., Inc. v. Ala. Dep't of Envtl. Mgmt.*, 799 F.2d 1473, 1478 (11th Cir. 1986) ("It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real ... [t]he practical likelihood that the contingencies will occur and that the controversy is a real one should be decisive in determining whether an actual controversy exists...."). The Court's discretion in deciding whether to grant or deny declaratory relief "should be exercised liberally in favor of granting such relief...." *Coregis Ins. Co. v. McCollum*, 955 F. Supp. 120, 123 (M.D. Fla. 1997).

### iii. Motion For More Definite Statement Under Fed. R. Civ. P. 12(e)

Rule 12(e) "allows a party to move for a more definite statement of a pleading to which a responsive pleading is allowed, but which is so vague or ambiguous that the party cannot reasonably prepare a response." *Phoenix Ins. Co. v. WSG Mgmt. Co.*, No. 10-22706, 2011 WL 13860, at *3 (S.D. Fla. Jan. 4, 2011). "A motion for a more definite statement 'must point out the defects complained of and the details desired.'" *Sabatula v. State Farm Mut. Auto. Ins. Co.*, No. 5:11-CV-368-OC-37TBS, 2011 WL 4345302, at *5 (M.D. Fla. Sept. 16, 2011). "Motions for a more definite statement are generally disfavored in the federal system," *Scott v. Merchants Ass'n Collection Div., Inc.*, No. 12-23018-CIV, 2012 WL

4896175, at *2 (S.D. Fla. Oct. 15 2012), and "cannot be used as a substitute for discovery

and deposition procedures." *Donovan v. Am. Leader Newspapers, Inc.*, 524 F. Supp. 1144,

1146 (M.D. Fla. 1981).

### B. AIG's MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE DECLARATIONS REGARDING THE NUMBER OF OCCURRENCES AND WHETHER INTERLINE'S DEDUCTIBLE OBLIGATIONS HAVE BEEN SATISFIED WERE PLEADED WITH SUFFICIENT SPECIFICITY AND ARE RIPE FOR THIS COURT'S DETERMINATION

#### i. Interline's Complaint Fully Complies With the Detail Requirements of the Federal Rules

AIG contends that the declarations sought by Interline related to aspects of AIG's

duty to indemnify, outlined in paragraph 59(a)–(c) of the Complaint, are "conclusory" and

"devoid of any factual allegations to support them." Rule 8, however, requires only that a

complaint contain "a short and plain statement of the claim showing that the pleader is

entitled to relief" sufficient to "give the defendant fair notice of what the plaintiff's claim is

and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Interline's Complaint, including paragraphs 58 and 59, satisfies this pleading

standard—Interline provided fair notice of and sufficient detail regarding the disputed issues

and facts necessary to their resolution. Interline makes clear that it seeks a declaration

regarding: (1) the number of occurrences implicated by the Underlying Lawsuits and

Outstanding Claims and (2) whether Interline's deductible obligation(s) (contingent on the

number of occurrences) have been exhausted by prior payments.[4]  The facts relevant to those

issues—Interline's distribution of allegedly defective water supply lines resulting in property

damage taking place during the policy period—have also been pleaded with sufficient

---

[4] Interline also seeks a declaration as to the number of policies implicated by the Underlying Lawsuits and Outstanding Claims for the reasons discussed in footnote 2, supra.

particularity. Because the Complaint gives AIG fair notice of Interline's claims and the bases therefore, it satisfies Rule 8(a), and AIG's motion to dismiss should be denied accordingly.

### ii. These Issues Are Ripe For Adjudication Because An Actual Dispute Of Sufficient Immediacy Exists Between The Parties, And Because Withholding Judicial Consideration Would Cause Harm To Interline

#### a. Actual Dispute

Despite AIG's argument to the contrary, a ripe and actual dispute exists between the parties with respect to: (1) the number of occurrences implicated by the Underlying Lawsuits and Outstanding Claims, and (2) whether Interline's deductible(s) have been exhausted to date.[5] AIG's Answer to Interline's Complaint confirms as much. For example, in paragraph 46 of its Answer, AIG specifically denies Interline's allegation that its deductible obligations have been satisfied by payments made to date:

> [Complaint ¶ 46]. Interline itself has paid close to $75,000 toward exhaustion of its contractual deductible obligation and any applicable retention, and jointly liable parties have paid substantial additional sums, serving to fully erode Interline's deductible....

> [Answer ¶ 46]. Denied that Interline's deductible obligations are eroded.

Similarly, AIG's contention that an actual controversy does not exist with respect to the number of occurrences implicated is belied by its own admission:

> [Complaint ¶ 58]. Specifically, AIG disagrees with Interline that the Underlying Lawsuits and Outstanding Claims arise from a single occurrence, being the distribution in commerce by Interline of a product containing a like alleged design or manufacturing defect

> [Complaint ¶ 59(c)]. AIG disagrees with Interline as to: ... when and under what circumstances AIG's per-occurrence and aggregate limits exhaust, thus

---

[5] Interline also seeks a declaration as to the number of policies implicated by the Underlying Lawsuits and Outstanding Claims for the reasons discussed in footnote 2, supra.

affecting the obligations of Liberty

[Answer ¶ 58]. **[A]dmitted that AIG disagrees with Interline that the claims arise from a single occurrence**, being the distribution in commerce by Interline of a product containing a like alleged design or manufacturing defect

Thus, because (1) Interline believes that all claims of property damage arose out of a single occurrence and that, as a result, only a single deductible is implicated, and that any deductible obligation(s) have already been satisfied by payments made toward the previously-resolved water supply line claims, and (2) AIG disagrees with those contentions,[6] an actual and substantial controversy exists between the parties.

### b.  Of Sufficient Immediacy

The dispute between the parties regarding the number of occurrences and exhaustion of the deductible(s)[7] is sufficiently immediate.  A ripeness determination must be decided under the facts of each case, *Maryland Casualty*, 312 U.S. at 273, and the fact "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action." *Assoc. Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992).[8] Rather, courts focus on the "practical likelihood" that the contingencies will occur. *E.g., id.*

First, it must be conceded that the deductible issue is ripe.  Interline takes the position that its deductible can and has been exhausted by both defense and indemnity costs paid by

---

[6] In addition to the concessions in AIG's Answer, AIG confirmed that these issues are disputed—stating to Interline that each individual claim of property damage constitutes a separate "occurrence" and triggers a separate $75,000.00 deductible obligation under the Policies.  AIG has also asserted that if it were to settle any claims, it would seek reimbursement from Interline for the corresponding number of deductibles.

[7] Interline also seeks a declaration as to the number of policies implicated by the Underlying Lawsuits and Outstanding Claims for the reasons discussed in footnote 2, supra.

[8] *See also, e.g., Kunkel v. Cont'l Cas. Co.*, 866 F.2d 1269, 1274 (10th Cir. 1989) ("The contingent nature of the right or obligation in controversy will not bar a litigant from seeking declaratory relief when the circumstances reveal a need for a present adjudication."); *Icarom, PLC v. Howard Cnty., Md.*, 904 F. Supp. 454, 458 (D. Md. 1995) ("This disagreement presents a definite and concrete dispute which is ripe for adjudication [because] [a]ll the salient facts establishing a right to declaratory relief have already occurred.").

Interline and others on Interline's behalf.   Specifically, Interline's deductible has been satisfied by the substantial defense and indemnity payments made by Interline's suppliers and, most recently, amounts paid by Interline itself.  AIG disagrees with this proposition, thereby exposing Interline – presently – to additional deductible obligations pertinent to each unresolved claim, and may be due reimbursement for monies already paid.   Thus, the contingency has already occurred.

AIG also argues that a declaration regarding its duty to indemnify is not ripe until the underlying claims have been resolved, since its duty to indemnify depends on their outcome. While this principle governs most cases, the facts and circumstances of this case prohibit its application.  Unlike the insureds in the cases cited by AIG, Interline is the subject of pending suits that mirror a number of like suits, some of which have resolved already, all premised on the same facts necessary to adjudicate the declarations sought by Interline—that is, **property damage** occurring **during the policy periods** resulting from **Interline's distribution** of defective water supply lines.  Federal courts have long recognized that where underlying pending suits are merely links in a chain of materially identical suits and do not involve new facts necessary to resolve the declarations sought, resolution of the underlying suits is unnecessary and the declaratory action is ripe. *See, e.g., Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22 (3d Cir. 1985); *Seguros Tepeyac, S. A. v. Jernigan*, 410 F.2d 718, 729 (5th Cir. 1969); *Flintkote Co. v. Gen. Acc. Assur. Co. of Canada*, No. C 04-01827 MHP, 2006 WL 1867538, at *5 (N.D. Cal. July 5, 2006); *Icarom, PLC v. Howard Cnty., Md.*, 904 F. Supp. 454, 458 (D. Md. 1995); *Keene Corp. v. Ins. Co. of N. Am.*, 667 F.2d 1034, 1040 (D.C. Cir. 1981).

In *Keene*, an insured-manufacturer sought a declaration of its rights and obligations

under a CGL policy with respect to litigation arising out of its manufacture of products

containing asbestos. 667 F. 2d at 1038. The insurer moved to dismiss the complaint, arguing

that the action was not ripe because "the rights and obligations created by the insurance

policies cannot be determined without consideration of the facts of a particular underlying

suit." *Id.* at 1040. The court disagreed, emphasizing that, as here, the contingencies were

likely to occur and the pending and future suits were materially identical—"[the insured] has

been, and will continue to be, sued for injuries that result from the use of its asbestos

products." *Id.*[9] The court also rejected the insurer's argument, like AIG's here, that facts

from the underlying suits were needed to render a declaration, stressing that the relevant

policy terms and necessary facts were already before the court:

> [The insurer] implies that the rights and obligations created by the insurance
> policies cannot be determined without consideration of the facts of a particular
> tort suit. We have before us, however, the terms of the insurance policies and
> the facts of the particular types of diseases whose coverage is at issue. We are
> not aware or informed of any facts that would come to light in a particular tort
> suit that would be relevant to the determination of the policies' applicability to
> the [insured's] liability for asbestos-related injury.

*Id.* Accordingly, the court held that a real, substantial and justiciable controversy existed,

"and the rights and obligations of [the insured] and its insurers must be resolved." *Id.*

Similarly, in *ACandS, Inc. v. Aetna Casualty & Surety Co.*, 666 F.2d 819 (3d Cir.

1981), the insured, like Interline, was sued as a co-defendant in over 800 suits resulting from

---

[9] *See also In re Amatex Corp.*, 107 B.R. 856, 865 (E.D. Pa. 1989) (holding a declaration regarding the extent of insurers' liability for past and pending lawsuits arising out of insured's manufacture of products containing asbestos ripe, reasoning that "[the insured] herein is, and will continue to be, sued for injuries that result from the use of its products which contained asbestos"); *Flintkote*, 2006 WL 1867538, at *2, 4-5 (rejecting insurer's contention that declaratory action regarding coverage for pending and future asbestos claims was unripe as to claims in which a judgment or settlement had yet to be rendered, underscoring that the insured "has already tendered many cases to [the insurers] for defense and indemnification, and will continue to do so in the future as the asbestos-related claims against plaintiff continue to be filed."; "Extending the scope of the declaratory relief to additional similar lawsuits, which will be filed in the future with a high degree of certainty, does not exceed the court's authority under Article III.").

its installation of products containing asbestos. For years, the insured was defended and indemnified until a disagreement arose regarding, *inter alia*, which "trigger theory" applied to the insured's alleged misconduct. *Id.* As here, the crux of the declaratory judgment action was the interpretation of policy terms as applied to the common thread of facts applicable to all of the underlying suits. *Id.* at 821-822. The Third Circuit Court of Appeals found the case justiciable, reversing the district court's finding that the case was unripe because "the facts of the underlying asbestos suits were not before the court; ... [and] [the insured] had not yet become liable to pay any judgment...." *Id.* at 822. The Third Circuit emphasized that "the factors that will determine the relative duties and benefits of the insurance contracts are independent of the underlying claims" and "[d]eclaratory suits to determine the scope of insurance coverage have often been brought independently of the underlying claims albeit the exact sums to which the insurer may be liable to indemnify depend on the outcome of the underlying suits." *Id.* at 822-23.[10] *Icarom* is also instructive. There, the insurer sought a declaration as to whether the damages alleged and to be alleged in underlying pending and future suits constituted "property damage" caused by an "occurrence." 904 F. Supp. at 456-57. The insured argued that the declaratory action was unripe because any decision would be merely "an advisory opinion based on hypothetical scenarios and unalleged facts." *Id.* at 457. The court disagreed, finding the case justiciable because, as here, the facts necessary to resolve the issues presented were already known and settlement discussions with many of the plaintiffs in the pending suits had already begun:

---

[10] *See also Riehl*, 772 F.2d 19, 21-22 (holding declaratory action justiciable because, even though liability and amount of damages had yet to be determined in underlying action, "the essential facts establishing rights to relief, including declaratory relief, have already occurred....").

This disagreement presents a definite and concrete dispute which is ripe for adjudication. All the salient facts establishing a right to declaratory relief have already occurred. For example, several off-site residents have already instituted claims against [the insured]. In fact, according to [the insured's] July 11, 1994, letter to [the insurer], the process of negotiating settlements with seven aggrieved landowners has already begun. Thus, a declaratory judgment of the issues presented, in advance of the institution of a lawsuit or the entry of a formal judgment, would not be 'an abstract discussion and premature adjudication of factual issues that are not yet concrete.'

*Id.* at 458.[11]

Here, as in *Keene, ACandS,* and *Icarom,* the facts necessary to resolve the declarations sought—Interline distributed allegedly defective water supply lines resulting in property damage during the policy period(s) at issue—are already known. Indeed, these are the very facts that formed the basis for Interline's liability as a co-defendant in the hundreds of past and pending water supply line suits—three of which have recently been settled and paid for by Interline, while many others are the subject of on-going settlement discussions. It is equally well established that the suppliers for years paid substantial amounts, on Interline's behalf, in connection with the past, materially-identical water supply line suits arising out of the same pertinent facts as those at issue in this action.

---

[11] Additionally, federal courts in this District have recognized that declaratory actions involving an insurer's duty to indemnify are ripe for adjudication under certain circumstances even where the underlying suits upon which such duty is based have yet to be resolved. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Sampson,* 305 F. Supp. 50, 52 (M.D. Fla. 1969) ("Neither of the injured motorcycle riders, nor their parents, have as yet filed actions against the other parties in this suit for personal injuries and property damage. However, it is obvious that suit is imminent pending the outcome of this litigation and the Court finds that under the circumstances the lack of a pending claim or a court suit by the injured parties should not be a barrier to jurisdiction and a declaration of rights in this action."); *Powers,* 2010 WL 2889759 at *4 ("[The insurer] also argues that declaratory relief is not warranted because there is no issue regarding whether the damage to [the insured's] property is covered under the policy, as [the insurer] is not contesting coverage. This argument misses the mark, as [the insured] points out that she is seeking a declaration regarding the proper method of repairing her property that she is entitled to under the policy.").

In sum, because an actual, present and substantial dispute of sufficient immediacy exists, the declarations sought by Interline with respect to the Underlying Lawsuits and Outstanding Claims are ripe for this Court's consideration.

c.   Hardship to Interline

Abstention by this Court would cause unnecessary hardship to Interline. The majority of individual claims that comprise the Underlying Lawsuits and Outstanding Claims allege property damage in amounts below Interline's $75,000.00 per-occurrence deductible. Many of these claims are ripe for settlement. Because AIG maintains that *each* claim constitutes a separate "occurrence," each claim is allegedly subject to a $75,000.00 deductible. The Court's resolution of: (1) the number of occurrences, and (2) whether past payments with respect to similar claims have satisfied Interline's deductible obligation(s),[12] thus will have a direct, immediate and substantial impact on the defense and settlement of the Underlying Lawsuits and Outstanding Claims. This Court's guidance is important to aid Interline and AIG in formulating their litigation strategy, streamlining the settlement process, and conserving their respective resources. *See, e.g., Kunkel*, 866 F. 2d at 1275 ("The dispute over the meaning of '40,000 Each Claim' can only add uncertainty to a settlement process where certainty is sought. A declaration ... might very well affect both parties' settlement strategy."); *ACandS*, 666 F.2d at 823 ("The respective ... obligations of insured and insurers, when disputed, require determination much in advance of judgment since they will designate the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and

---

[12] Interline also seeks a declaration as to the number of policies implicated by the Underlying Lawsuits and Outstanding Claims for the reasons discussed in footnote 2, supra.

risks of settlement ... To delay for the sake of more concrete development would prevent the litigants from shaping a settlement strategy and thereby avoiding unnecessary costs.").[13]

In sum, although the Underlying Lawsuits and Outstanding Claims are still pending, their resolution is unnecessary under the circumstances of this case, as many cases have already resolved and the exposures presented thus quantified can reasonably be anticipated to recur. As confirmed above, an actual dispute exists between Interline and AIG. Moreover, given that Interline has been, is being, and will continue to be sued for property damage allegedly caused by its distribution of allegedly defective water supply lines—the only facts necessary to resolve the declarations sought—the issues sought to be resolved in this suit are substantial and sufficiently immediate to warrant this Court's consideration.

### C. AIG's Motion To Dismiss Should Be Denied Because Whether AIG Has A Duty To Defend Interline In The Underlying Lawsuits And Outstanding Claims Is An Issue Ripe For Consideration Despite AIG's Agreement To Defend Under a Reservation Of Rights

AIG's duty to defend Interline in the Underlying Lawsuits and Outstanding Claims is ripe because, unlike the insurers in the cases relied upon by AIG, AIG has asserted complete control over the defense while retaining the right to seek reimbursement from Interline for all fees and costs incurred at AIG's sole discretion. Where a party to an insurance contract acts in such a way that exposes the other to substantial monetary obligations, federal courts in this District find a declaration as to those issues ripe for consideration. *See generally United Nat.*

---

[13] *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co.*, 873 F.2d 229, 232 (9th Cir. 1989) ("[T]here was a definite and real dispute that made settlement of the underlying litigation a virtual impossibility prior to the resolution of the coverage issue."); *Rubins Contractors, Inc. v. Lumbermens Mut. Ins. Co.*, 821 F.2d 671, 674 (D.C. Cir. 1987) ("If insurance provided only a right to reimbursement for final judgments entered against the insured, a finding of ripeness might be difficult on the facts of this case. But the policies' protections are considerably broader, including a right to the insurer's provision of a defense and active participation in settlement ... It seems inescapable that uncertainty over coverage would skew the settlement process.").

*Ins. Co. v. Jacobs*, 754 F. Supp. 865, 870 (M.D. Fla. 1990) (holding that when an insurer assumes an insured's defense, the insurer gains exclusive control of the defense and is entitled to make strategic and economic decisions on behalf of the insured); *McCollum*, 955 F. Supp. at 123-24 ("If this Court denied Plaintiff a declaration of its rights and obligations under its policy with Defendants McCollum and Johnson, it would be exposing the Plaintiff to a 'very substantial and perhaps a binding obligation for providing a defense' to those Defendants without Plaintiff's knowing whether it owes such an obligation.").

If this Court were to abstain from deciding whether AIG has a duty to defend the Underlying Lawsuits and Outstanding Claims, Interline would be left potentially exposed to substantial defense and indemnity costs (to the extent falling within the deductible as claimed by AIG) incurred by AIG at AIG's sole discretion. A decision by this Court will enable Interline to better assess settlement, its involvement in managing the defense, and its general litigation strategy. Accordingly, an actual and substantial dispute of sufficient immediacy exists and warrants this Court's consideration.

### D. AIG's Motion to Dismiss Should Be Denied Because Interline's Request For Damages "If Necessary To Provide Full Relief" Does Not Provide AIG With Grounds For Dismissal

AIG's claim that Interline's "request for damages in the 'wherefore' clause should be dismissed for failure to state a claim upon which relief may be granted and because it is premature" fails as a matter of law. A request for damages is appropriate in a declaratory action to preserve the Court's jurisdiction to enforce the resulting judgment.[14] *See, e.g.,* 28 U.S.C. § 2202; *Nat'l Fire Ins. Co. of Hartford v. Bd. of Pub. Instruction of Madison Cnty.,*

---

[14] For example, Interline may be entitled to substantial reimbursements on its deductible obligations depending on this Court's declarations.

*Fla.*, 239 F.2d 370, 376 (5th Cir. 1956) ("The [DJA] contemplates that all necessary or proper relief based on the declaratory judgment should be granted."). While a request for damages is not *necessary* to preserve the Court's jurisdiction to enforce its declaratory judgment with respect to subsequently accrued damages, such a request is not grounds for dismissal. *See Sonic Momentum B, LP v. Motorcars of Distinction, Inc.*, No. 11-80591-CIV, 2011 WL 4738190, at *3 (S.D. Fla. Oct. 7, 2011) (rejecting defendant's contention that the complaint for declaratory relief should be dismissed in part because an assertion of damages was inappropriate); *see also Auto-Owners Ins. Co. v. Johnson, Rast & Hays Ins. of S. Ala., Inc.*, 820 F.2d 380, 384 (11th Cir. 1987) (holding recognizing that in a declaratory judgment action, a court may "properly award[] monetary relief as well as a declaration of the rights and obligations of the parties.").

### E. AIG'S MOTION FOR MORE DEFINITE STATEMENT SHOULD BE DENIED BECAUSE THE ALLEGATIONS IN THE COMPLAINT ARE SUFFICIENT TO ELICIT A RESPONSE FROM AIG AND THE ADDITIONAL INFORMATION REQUESTED BY AIG SHOULD BE OBTAINED THROUGH DISCOVERY

#### i.  Paragraph 59(a) – (c)

Interline has adequately pleaded its claim and AIG fails to offer a reason why it cannot prepare a response. *See Gombos v. Cent. Mortg. Co.*, No. 10-81296-CIV, 2011 WL 832878, at *1 (S.D. Fla. Mar. 3, 2011) ("Rule 12(e) is intended to provide a remedy for an unintelligible pleading, rather than a vehicle for obtaining greater detail."). Specifically, paragraph 59(a)–(c) of Interline's Complaint merely sets forth the aspects of AIG's duty to indemnify that AIG itself has admitted are currently in dispute:

(a) how, and to what extent, payments by Interline and/or other liable parties exhaust Interline's deductible obligations, to the extent remaining;

(b) how, and to what extent, AIG's obligation to indemnify is to be calculated,

including whether one, or more than one, policy is triggered by payment of settlements or judgments, including the role, if any, of any policy provisions designed to collapse continuing harm into a single policy period;

(c) when, and under what circumstances, AIG's per-occurrence and aggregate limits exhaust, thus affecting the obligations of Liberty

Paragraph 59 makes clear that Interline seeks a declaration as to: (1) the number of occurrences, (2) the number of applicable policies, as that determination impacts the issue of whether Interline's deductible obligations have been satisfied to date, and (3) whether Interline's deductible obligations (contingent on the number of occurrences and number of applicable policies) have been satisfied to date.

The additional information sought by AIG includes a clarification of the declarations sought and the policy provisions upon which the declarations are based. As discussed herein, however, the declarations sought by Interline are sufficient under Rule 8 as they provide AIG with fair notice of the issues Interline seeks to resolve in this action. Additionally, because the issue of the number of deductibles is directly tied to the number of "occurrences" implicated by the Underlying Lawsuits and Outstanding Claims, the definition of "occurrence" set forth in the Complaint is sufficient for AIG to form a response as to these declarations. (Elsewise, AIG would necessarily concede that its own policy language is sufficiently unclear to enable a declaration as to its meaning). For the foregoing reasons, AIG's motion for more definite statement with respect to paragraph 59 fails.

### ii. Outstanding Claims

The Complaint's definition of "Outstanding Claims" is likewise sufficient for AIG to form a response.[15]   Interline defines "Outstanding Claims" to mean "other cases of a like

---

[15] AIG's contention that Interline's Complaint is so vague and ambiguous as to prevent AIG from forming an

nature relating to property damage incurred as a result of allegedly defective water supply lines." Interline seeks a declaration regarding "Outstanding Claims" to ensure that this Court's adjudication of the issues with respect to the Underlying Lawsuits are applied equally to the Outstanding Claims. This is sensible, since the Outstanding Claims are lawsuits identical to the Underlying Lawsuits (and hundreds of similarly identical suits that have been previously resolved) in every respect material to the dispositions sought in this case. Indeed, where the insured has been, is being, and will continue to be sued in substantially similar lawsuits, courts have found similar definitions sufficient to justify a declaration regarding an insurer's duty to defend and indemnify the insured in like pending and future suits.

In *Flintkote*, for example, the insured sought a declaration regarding its insurers' defense and indemnity obligations with respect to pending and future "asbestos related claims"—defined by the insured to mean "claims of bodily injury from asbestos exposure implicating [the insured]...." 2006 WL 1867538 at *2. The insurers argued that the Court's declaration with respect to "future, unmade asbestos claims, the parameters of which are entirely unknown ... would constitute a prohibited advisory opinion." *Id.* at *5. The Court disagreed, noting that the insurer's contention was "predicated on the absurd assumption that plaintiff must individually litigate defendants' obligations with respect to each asbestos-related lawsuit that is filed." *Id.* at *4-5. Because the definition of "asbestos-related lawsuits" clarified that "[t]he relief sought by [the insured] ... [was] categorical, imposing a

---

intelligible response is belied by the fact that Liberty, AIG's co-defendant, did in fact respond. *See Cox v. Maine Mar. Acad.*, 122 F.R.D. 115, 117 (D. Me. 1988) ("That the other defendants were able to file responsive pleadings is 'some evidence' that a response is possible.").

19

duty to defend and indemnify plaintiff asbestos-related suits," the court held a declaration as to pending and additional "asbestos-related suits" justiciable where such suits would be filed with a high degree of certainty. *See id.* at *5.

Like in *Flintkote*, all facts necessary to determine the number of occurrences implicated by Interline's distribution of allegedly defective water supply lines are contained in Interline's definition of Outstanding Claims. The additional information sought by AIG— the identity of the claimant, the location and date of the alleged damage, the property allegedly damaged, and whether any lawsuit has been filed against Interline with respect to the Outstanding Claims—has already been set forth in the Complaint and/or is irrelevant to the issues presented in this action—the number of occurrences, the exhaustion of deductibles,[16] and AIG's duty to defend.

Moreover, the additional details sought by AIG are more appropriately the subject of discovery. *See, e.g., Boldstar Technical, LLC v. Home Depot, Inc.*, 517 F. Supp. 2d 1283, 1291 (S.D. Fla. 2007) (denying a Rule 12(e) motion and finding that the purpose of the pleading standards under Rule 8 is to "strike at unintelligibility rather than want of detail and allegations that are unclear due to a lack of specificity are more appropriately clarified by discovery rather than by an order for a more definite statement").

## III.   CONCLUSION

For the foregoing reasons, Defendant, AIG Specialty Insurance Company's, motion to dismiss the complaint in part or, in the alternative, for a more definite statement in part [D.E. 13], should be denied in its entirety.

---

[16] Interline also seeks a declaration as to the number of policies implicated by the Underlying Lawsuits and Outstanding Claims for the reasons discussed in footnote 2, supra.

Dated this July 3, 2014.

Respectfully submitted,

/s/R. Hugh Lumpkin
**R. Hugh Lumpkin**
Florida Bar No. 308196
rlumpkin@vpl-law.com
**Ashley Hacker**
Florida Bar No. 71924
ahacker@vpl-law.com
**Arya Attari**
Florida Bar No. 58847
aattari@vpl-law.com
**Christopher T. Kuleba**
Florida Bar No. 105302
ckuleba@vpl-law.com
**VER PLOEG & LUMPKIN, P.A.**
COUNSEL FOR PLAINTIFFS
100 S.E. 2nd Street, 30th Floor
Miami, Florida 33131
Telephone: (305) 577-3996
Facsimile:  (305) 577-3558

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 3, 2014, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List *via* transmission of Notice of Electronic Filing generated by CM/ECF.

By: *s/R. Hugh Lumpkin*
R. Hugh Lumpkin

## SERVICE LIST

| | |
|---|---|
| Frank Morreale, Esq.<br>Nelson Mullins Riley & Scarborough, LLP<br>50 N. Laura Street<br>Suite 2850<br>Jacksonville, FL 32202<br>Tel: 904-665-3651<br>frank.morreale@nelsonmullins.com<br>Via CM/ECF<br>*Attorneys for Liberty Insurance Co. and Liberty Mutual Fire Insurance Co.* | Irene Porter, Esq.<br>Jedidiah D. Vander Klok, Esq.<br>Hicks Porter Ebenfield & Stein, P.A.<br>799 Brickell Plaza<br>Suite 900<br>Miami, FL 33131<br>Tel: 305-374-8171<br>iporter@mhickslaw.com<br>jvanderklok@mhickslaw.com<br>Via CM/ECF<br>*Attorneys for AIG Specialty Ins. Co.* |
| Robert L. Hoegle, Esq.<br>Bob.hoegle@nelsonmullins.com<br>Timothy J. Fitzgibbon, Esq.<br>Tim.fitzgibbon@nelsonmullins.com<br>Nelson Mullins Riley & Scarborough LLP<br>101 Constitution Avenue NW, 9th Floor<br>Washington, DC 20001<br>*Pro Hac Vice Attorneys for Liberty Insurance Co. and Liberty Mutual Fire Insurance Co.* | |

214704_1